**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

FORUM ARCHITECTS LLC,
a Limited Liability Corporation

        Plaintiff,                                   Case No.: 1:07cv190/SPM/AK

v.

ED CANDELA, et al.,

        Defendants.

_____ /

## ORDER DENYING MOTION TO DISMISS

        THIS CAUSE comes before the Court upon the Motion to Dismiss, or in the

alternative Motion for Summary Judgment, filed by Defendants Ed Candela, Pat

Candela, Bill Cox, Lillian M. Cox, Dawn Clary, Karen Goode, Larry Cohan, Linda

Cohan, Marsha Drew, Mike Lineberger, Tony Photopolis, Larry Feldhusen, Diane

Sheer, Steve Young, Betty Berger, Steve West, Sally Price, Nancy Moore, Peggy

Page, Dave Gatelein, Genie Sturtevant, Michael Peters, Frank Hodge, Gracie

Hodge, Edith McCrimmon, Mike Clary, Jean Dawkins, George Ross, Mary Pate

and Maxine Comer[1], (doc. 37); the Motion to Dismiss, or in the alternative Motion

for Summary Judgment, filed by Defendant Mary Pate (doc. 47); the Motion to

Dismiss, or in the alternative Motion for Summary Judgment, filed by Defendant

_____

        [1] Plaintiff voluntarily dismissed the following Defendants William Cox, Lillian M. Cox, and
Dave Gatelein from this case. (doc. 99)

Karen Goode (doc. 58); and the Plaintiff's responses in opposition (docs. 42, 43, 61, and 79).  Though the motions involve various Defendants, the arguments made by all the Defendants are identical in substance, with only minor variations among them.  Therefore, in the interests of convenience and efficiency, this Court will evaluate all Defendants' claims in this same order.  For the reasons set forth below, all of Defendants' motions will be denied.

## I. BACKGROUND

Plaintiff, Forum Architects LLC ("Forum"), entered into a contract with a developer, Izaak Walton Investors ("IWI"), to design a mixed use residential-commercial development on six parcels of land in Yankeetown, Levy County, Florida.  The six parcels of land were owned or under contract to own by IWI.  Forum was retained by IWI to fill out and submit any applications required by any governmental agency for the mixed use development being planned; complete flood and zoning applications; prepare surveys; prepare the environmental resource permit applications; and prepare a preliminary concept for design and location of buildings.  It was also the responsibility of Forum to meet with zoning officials and answer all questions and provide information about the development.  Before obtaining a building permit, IWI needed to obtain a certificate of flood and zoning compliance, and, for certain types of development such as a marina, a detailed site plan approval.

Defendants are all residents of Levy County, Florida and members of an organization called "Save Withlacoochee and Yankeetown" ("SWAY").  Plaintiff

defines SWAY as a group who is dedicated to stopping IWI's development of six parcels of river-front property in Yankeetown, Levy County, Florida.  Plaintiff claims that SWAY used their funds to spread rumors and report inaccuracies about the development project.  Plaintiff also claims that SWAY intimidated local officials into voting against Plaintiff and IWI's project.  Additionally, Plaintiff claims that any local leader who expressed public support for the project was threatened, intimidated, and eventually forced to resign from office.  Council members who resigned were eventually replaced by members of SWAY, who had been hostile towards Plaintiff's development project with IWI.

In July 2005, IWI met with council members of Yankeetown and explained IWI's intent to develop the six parcels of land that IWI had purchased.  In October 2005, local elections were held and Joanne Johannesson was elected mayor. On May 2, 2006, IWI submitted six applications for flood and zoning compliance review.  On May 31, 2006, a letter was sent to the city council from Stanley E. Moore acknowledging acceptance and approval of IWI's zoning applications and identifying that IWI needed to submit an additional $6,120.  The letter also indicated that the town had 30 days to review IWI's detailed site plan.  Moore directed IWI to submit supplemental information and detailed site plans, which would then be submitted to the city on behalf of IWI.   In August, Moore sent a letter to Mayor Johannesson, reconfirming his approval of IWI's flood and zoning compliance applications.

Prior to final acceptance of the plan by the town council, Moore resigned.

Additionally, by September, 2006, all but three members of the town council had resigned.  Plaintiff claims that they resigned amid slanderous and defamatory allegations and accusations and threats of bodily harm and economic damage. As an example, Plaintiff alleges that one of the town councilwomen, Helen Ciallella, "resigned amid members of SWAY's allegations of a conflict of interest, and threats of bodily harm" because Ciallella had executed a purchase and sale contract for the sale of her property to IWI.

Additionally, Yankeetown Mayor Joanne Johannesson was accused of secretly working with IWI and Forum in order to advance the IWI project. Yankeetown citizens submitted two petitions for the removal of Mayor Johannesson from office.  However, at the Mayor's recall hearing, on June 28, 2006, a judge found that the mayor was not subject to a recall under state statutes and that the basis of the recall petitions were insufficient and unfounded. Notwithstanding the judge's decision, on September 19, 2006, Mayor Johannesson resigned in a letter to then-Governor Bush stating that "there are some who may have engaged in illegal and immoral actions to obstruct these property owners (IWI).  These actions include the theft of development submittals and public documents and the manipulation of Town codes and procedures to halt the administrative process."  Plaintiff claims that those actions stated in the letter were undertaken as part of the stated purposes of Defendants, through their involvement with SWAY.  Eventually, the town attorney sent a letter to Governor

Bush requesting assistance in the governance and operation of the town.  In response, Governor Bush appointed an emergency financial board to administer the financial business of Yankeetown.

On September 29, 2006, members of SWAY filed a Notice of Appeal against Moore's approval of the flood and zoning applications.  In November 2006, after no final decision had been made by the town council on the zoning applications, IWI filed a Writ of Mandamus for a new zoning official to be appointed.  During the period of time between Moore's approval of the zoning applications and the appointment of Jetton, four council members who had expressed support for the project resigned.  The new council members who were elected and eventually halted the development project were all members of SWAY.  The new council members appointed Rebecca Jetton as its part-time zoning official.  Jetton then issued a rejection of the development plan that had previously been approved by Stanley Moore.

Subsequently, on September 28, 2007, the Plaintiff brought this action for tortuous interference with an advantageous business or contractual relationship and conspiracy to tortiously interfere.  Certain Defendants have filed motions to dismiss the complaint for lack of subject matter jurisdiction due to lack of ripeness and for a failure to state a claim for which relief can be granted, or in the alternative, a motion for summary judgment.

## II. DISCUSSION

**A.      Legal Standard for a Motion to Dismiss**

1. <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

        A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may
constitute a facial attack based on the complaint or it may be a factual attack that
challenges the existence of subject-matter jurisdiction irrespective of the pleadings.
<u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1260-61 (11th Cir. 1997).
When there is a factual attack the court may consider matters outside of the
pleadings, such as testimony and affidavits.[2]  <u>Id.</u> at 1261; <u>see</u> <u>also</u> <u>Land v. Dollar</u>,
330 U.S 731, 735 n.4 (1947) ("But when a question of the District Court's
jurisdiction is raised, either by a party or by the court on its own motion . . . the
court may inquire by affidavits or otherwise, into the facts as they exist.").

        When the attack on subject matter jurisdiction is intertwined with the merits
of the case and implicates the existence of an element of the cause of action, the
court should find that there is jurisdiction and "'deal with the objection as a direct
attack on the merits of the Plaintiff's case.'" <u>Garcia</u>, 104 F.3d at 1261 (quoting
<u>Williamson v. Tucker</u>, 645 F.2d 404, 415 (5th Cir. 1981)).  In such cases, the court
evaluates the motion under Rule 12(b)(6) and Rule 56.  <u>Id.</u> If the court considers
matters outside the complaint and thus converts the motion to dismiss into a

--------

        [2] Generally, when a court considers matters outside the pleadings when ruling on a Rule
12(b)(1) motion, this does not convert the motion into a motion for summary judgment.  <u>Stanley
v. Cent. Intelligence Agency</u>, 639 F.2d 1146, 1158 (5th Cir. 1981); <u>see also</u> <u>Region 8 Forest
Serv. Timber Purchasers Council v. Alcock</u>, 993 F.2d 800, 807 n.8 (11th Cir. 1993) ("The
conversion feature of Rule 12(b) . . . is limited to motions to dismiss for failure to state a claim
brought pursuant to Rule 12(b)(6).").

motion for summary judgment, the court must give the parties notice and allow

them to submit evidence, unless the parties were aware of the court's intent to

consider such matters and had already presented their arguments and evidence.

Id. at 1266, n.11.  In this case, the Court declines to consider matters outside of the

complaint, therefore, this matter is evaluated under the standard for the motion to

dismiss.

2. Motion to Dismiss for Failure to State a Claim

    Under Rule 8 of the Federal Rules of Civil Procedure, a Plaintiff is required

to include in the complaint only a short and plain statement of the claim that

demonstrates that the Plaintiff is entitled to relief.  Fed. R. Civ. Pro. 8(a)(2).

"Factual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)

(citations omitted).  On the other hand, as the Supreme Court has repeatedly

stressed that "[s]pecific facts are not necessary; the statement need only give the

Defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal quotations omitted).

    All factual allegations in the complaint must be accepted as true.  Id; see

also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (noting that in

ruling on a 12(b)(6) motion the court should construe the pleadings broadly and

view the allegations in the light that is most favorable to the Plaintiff).  Based on the

standard for pleadings described in Bell Atlantic, to survive a 12(b)(6) motion to dismiss, the Plaintiff's complaint must allege "enough facts to suggest, raise a reasonable expectation of, and render plausible" the existence of an element of the claim.  Watts, 495 F.3d at 1295-96.

**B.     Subject-Matter Jurisdiction and Ripeness**[3]

The doctrine of ripeness is based both on the limitations on federal judicial power of Article III of the Constitution and on prudential concerns.  Nat'l Park Hospitality Assn' v. Dep't of Interior, 538 U.S. 803, 807-08 (2003); see also Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995).   Ripeness, similar to standing, which is another justiciability doctrine based on constitutional and prudential concerns, "present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute."  Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006).  The doctrine's purpose is to protect the courts from engaging in premature adjudication or becoming entangled in abstract disagreements between the parties.  Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).

Under the two prongs of the Abbott test, ripeness depends on whether the issues are fit for judicial review and on the hardship on the parties of withholding adjudication.  Id. at 148-49.  In particular, purely legal questions and questions that

---

[3] In reaching its decision on the question of ripeness, this Court has not taken notice of the exhibits attached to the Defendants' motions to dismiss.  Thus, despite the fact that the jurisdictional question is intertwined with the merits, the 12(b)(1) motion is not evaluated under Rule 12(b)(6) or Rule 56.

involve final agency action are fit for judicial review.  Id. at 149.  The determination of whether an issue is purely legal may depend on whether it would be clarified by further factual development.  Thomas v. Union Carbide Agric. Prods Co., 473 U.S. 568, 581 (1985); see also Beaulieu v. City of Alabaster, 454 F.3d 1219, 1227 (11th Cir. 2006); Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) (noting that the court must determine whether the issues are "sufficiently defined and concrete").

        The overwhelming majority of cases that raise the question of ripeness involve disputes that challenge, on constitutional grounds, the validity of a statute or the actions of a governmental body, local authority or agency.  See, e.g., Union Carbide, 473 U.S. at 580-81 (finding that a challenge to the constitutionality of an arbitration scheme imposed by a federal statute was ripe);  Digital Props., 121 F.3d at 590 (finding that a First Amendment challenge to a town's zoning ordinance was not ripe in the absence of conclusive administrative action); Beaulieu, 454 F.3d at 1230 (finding that a First Amendment challenge to an ordinance restricting signs was ripe after the city issued a written notice of violation).

        In the rare case where a common law action or an action for damages has been challenged for lack of ripeness, the courts have found that ripeness is linked to the Plaintiff's cause of action.  Thus, the Eleventh Circuit, after reviewing for ripeness four constitutional challenges to a zoning decision, concluded that the fifth claim, for tortious interference with an advantageous relationship, could proceed

because the Plaintiffs had alleged the required elements of the claim and would

prevail if they could prove them.  Executive 100, Inc.  v. Martin County, 922 F.2d

1536, 1542 (11th Cir. 1991); see also Vogel v. Foth & Van Dyke Assocs., 266 F.3d

838, 840 (8th Cir. 2001) (noting that a tort claim was ripe for adjudication where the

claimed injury was "fully accomplished" and where the contingent future

development could affect only the amount of damages); Gemtel Corp. v. Cmty.

Redevelopment Agency, 23 F.3d 1542, 1545-46 (9th Cir. 1994) (finding that a

claim for damages under ERISA was neither moot nor unripe and observing that it

was "hard to see how a claim for damages could be unripe.  Either a cause of

action has accrued, so it is ripe, or it has not yet accrued, so the complaint fails to

state a claim upon which relief can be granted.  . . .  Because resolution of

[Plaintiff's] claim does not depend on any future factual developments, the claim is

ripe.").

　　　　Similarly, in the present case, the underlying ripeness analysis is related to

the existence of an element of the Plaintiff's claim.  The Plaintiff has brought action

against private individuals for tortious interference with an advantageous

relationship.  In essence, the complaint alleges that these Defendants were aware

of Plaintiff's relationship with IWI and that their behavior would result in halting the

development of IWI's property and would therefore thwart the ongoing business

relationship between IWI and Plaintiff, resulting in harm to the Plaintiff.  Thus, there

is no need for further factual development to resolve the jurisdictional issue and the

claim is fit for judicial review.

The second prong of the ripeness inquiry under <u>Abbott</u>, the hardship to the Plaintiff due to withholding adjudication, also supports the finding that the claim is ripe for adjudication.  Therefore, there is no need to await further factual development as to the elements of Plaintiff's claim.  Assuming, as we must for the purposes of a motion to dismiss, that the Plaintiff is able to prove those elements, withholding adjudication would undeniably constitute a hardship for the Plaintiff who would be deprived of the opportunity to resolve its complaint against Defendants.  Thus, the claim is ripe for adjudication and consequently, Defendants' motions to dismiss for lack of subject matter jurisdiction will be denied.

**C.    Claim for Tortious Interference with an Advantageous Business or Contractual Relationship[4]**

1. <u>Intentional Interference</u>

Under Florida law, a claim for tortious interference with a business relationship has four elements: "(1) the existence of a business relationship that affords the Plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the Plaintiff." <u>Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.</u>, 262 F.3d 1152, 1154 (11th Cir. 2001).

---

[4] Tortious interference with a contractual relationship and with a business relationship represent the same cause of action under Florida law and differ only to the extent that in the former cause of action the business relationship is evidenced by a contract.  <u>Smith v. Ocean State Bank</u>, 335 So. 2d 641, 642 (Fla. Dist. Ct. App. 1976).

"[A]ctual ill-will or fraud is not an essential element of the tort where the record shows purposeful interference with a prior contract right." <u>McDonald v. McGowan</u>, 402 So. 2d 1197, 1201 (Fla. Dist. Ct. App. 1981).  "To do intentionally that which is calculated in the ordinary course of events to damage, and which in fact does damage, another person in his property or trade, is malicious in the law, and is actionable if done without just cause or excuse." <u>Symon v. J. Rolfe Davis, Inc.</u>, 245 So. 2d 278, 280 (Fla. Dist. Ct. App. 1971).  Intentional interference may be proved by circumstantial evidence.  <u>Sutton v. Stewart</u>, 358 So.2d 119, 121 (Fla. Dist. Ct. App. 1978).

Defendants argue that Plaintiff has failed to allege intentional interference with a contractual relationship.  Defendants rely on <u>Ethyl Corp. v. Balter</u>, in which the appellate court reversed a judgment for the plaintiff.  386 So. 2d 1220, 1221 (Fla. Dist. Ct. App. 1980).  The court found that the plaintiff had failed to prove intentional interference, where the steps the defendant had taken to safeguard its investment only very indirectly led to the investor's withdrawal.  <u>Id.</u> at 1223-24.  In contrast, a claim could withstand a motion to dismiss when the plaintiff alleged that the defendant intentionally interfered with plaintiff business's relationship with an insurance company by performing unnecessary repairs and misclassifying hurricane damages.  <u>Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.</u> 527 F. Supp. 2d 1355, 1368 (M.D. Fla. 2007).

In the present case, looking at the allegations in the complaint in the light

most favorable to Plaintiff, Plaintiff alleges that it had a contract with developer IWI to design and obtain permits for a development project, that Defendants knew about this business relationship, that Defendants intentionally and without justification interfered with that relationship by intimidating and threatening local officials who had authority to approve the development's zoning applications and publishing inaccurate information in an attempt to delay and halt Plaintiff's ability to continue its relationship with Forum.  Contrary to Defendants' claims, regardless of the finality of the approval of the flood and zoning compliance certificate, there was still an ongoing business relationship between Plaintiff and IWI.  Therefore, Plaintiff sufficiently alleges Defendants' direct interference with its business relationship with the developer to withstand a motion to dismiss.

2. <u>Actual Interference</u>

        Defendants also argue that Plaintiff cannot allege actual interference.  After looking only at the present complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff alleges that it had a contract to design a development and obtain the necessary permits and that Defendants' behavior resulted in the halting of this ongoing business relationship through intimidation of local officials in positions to approve the development project.  In addition, the complaint explicitly indicates that the contract with the developer included but was not limited to certain activities.  Defendants' assertions that by completing the listed activities the Plaintiff fulfilled all its obligations under that contract is therefore self-contradictory.

Plaintiff's allegations are sufficient to plausibly suggest that the Plaintiff had a contractual or business relationship with the developer to provide a series of services related to the project and that the Defendants interfered with that relationship. Therefore, Plaintiff's allegations are legally sufficient to withstand a motion to dismiss for failure to state a claim for which relief can be granted.

**C.    Motion for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Id.

However, a "premature decision on summary judgment impermissibly 'deprives the plaintiffs of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion.'" Vining v. Runyon, 99 F.3d 1056, 1058 (11th Cir. 1996) (quoting Snook v. Trust Co. of Georgia Bank of Savannah, N.A., 859 F.2d 865, 871 (11th Cir. 1988)). Specifically, Federal Civil Procedure Rule 56(f) states that if the party opposing the summary judgment motion "shows by affidavit that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."

However, "out of an abundance of caution and to prevent a possible injustice" Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1146 (5th Cir. 1973), "a party opposing a motion for summary judgment need not file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in order to invoke the protection of that Rule." Snook 859 at 871.  The "written representation by [plaintiff's] lawyer, an officer of the court, is in the spirit of Rule 56(f)" under circumstances such as we have in this present case.  Littlejohn, 483 at 1146.  "[T]he law of this Circuit recognizes that the interests of justice will sometimes require a district court to postpone its ruling on a motion for summary judgment even though the technical requirements of Rule 56(f) have not been met."  Snook, 859 F.2d at 871.

In this case, the first of Defendants' motions were submitted 30 days after the amended complaint was filed.  At that time, there had been absolutely no discovery.  As a result, Defendants have not laid sufficient factual foundation to support a motion for summary judgment.  Plaintiff has not submitted an affidavit stating that discovery has not been undertaken.  Plaintiff's counsel has however brought the absence of discovery to the Court's attention in it's response brief.  It is important that Plaintiff have an opportunity to undertake discovery in this case and file a factual response to Defendants' summary judgment arguments.  Therefore,

the motion for summary judgment will be denied without prejudice to Defendants'
opportunity to refile, with supporting documentation, another motion for summary
judgment.

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1.    Defendants' motion to dismiss (doc. 37) is hereby **denied**.

2.    In light of this Court's order granting Plaintiff's motion to amend the
complaint (doc. 72), Defendant Mary Pate's motion to dismiss (doc.
47) is hereby **denied**.

3.    Defendant Karen Goode's motion to dismiss (doc. 58) is hereby
**denied**.

4.    Defendant's motion to stay discovery pending the ruling on the
motions to dismiss (doc. 120) is hereby **denied as moot**.

5.    Defendant Steve Young and Defendant Michael Peters' motion for
joinder (doc. 125) is hereby **denied as moot**.

6.    Defendants' motions for summary judgment are **denied without
prejudice** to refile, with supporting documentation.

DONE and ORDERED this twenty-seventh day of June, 2008.


_s/ Stephan P. Mickle_
Stephan P. Mickle
United States District Judge