**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

FORUM ARCHITECTS LLC,
a Limited Liability Corporation

       Plaintiff,                                     Case No.: 1:07cv190/SPM/AK

v.

ED CANDELA, et al.,

       Defendants.
_____/

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT MICHAEL PETERS' MOTION TO DISMISS**

THIS CAUSE comes before the Court upon "Defendant Michael Peters' Motion to Dismiss Plaintiff's Amended Complaint", (doc. 130) and Plaintiff's response (doc. 322). For the reasons set forth below, Defendant's motion will be denied in part and granted in part.

**I. BACKGROUND**

Plaintiff, Forum Architects LLC ("Forum"), entered into a contract with a developer, Izaak Walton Investors ("IWI"), to design a mixed use residential-commercial development on six parcels of land in Yankeetown, Levy County, Florida. The six parcels of land were owned or under contract to own by IWI. Forum was retained by IWI to fill out and submit any applications required by any

governmental agency for the mixed use development being planned; complete flood and zoning applications; prepare surveys; prepare the environmental resource permit applications; and prepare a preliminary concept for design and location of buildings.  It was also the responsibility of Forum to meet with zoning officials and answer all questions and provide information about the development. Before obtaining a building permit, IWI needed to obtain a certificate of flood and zoning compliance, and, for certain types of development such as a marina, a detailed site plan approval.

The Defendant filing this motion to dismiss is a resident of Levy County, Florida and has participated with an organization called Save Withlacoochee and Yankeetown ("SWAY").  Plaintiff believes that Defendant's participation with SWAY resulted in a conspiracy to use any available means, including slander, defamation, and invasion of privacy in order to stop IWI's development of the riverfront property.  Specifically, in Count Three, the invasion of privacy claim against Defendant Peters, Plaintiff alleges that Defendant Peters has authored "scandalous, false, and [ ] highly offensive" statements abut Plaintiff's representative in this project and therefore caused Plaintiff to lose business. Plaintiff defines SWAY as a group who is dedicated to stopping IWI's development of six parcels of river-front property in Yankeetown, Levy County, Florida.  Plaintiff claims that SWAY used their funds to spread rumors and report inaccuracies about the development project.  Plaintiff also claims that SWAY

intimidated local officials into voting against Plaintiff and IWI's project. Additionally, Plaintiff claims that any local leader who expressed public support for the project was threatened, intimidated, and eventually forced to resign from office.  Council members who resigned were eventually replaced by members of SWAY, who had been hostile towards Plaintiff's development project with IWI.

In July 2005, IWI met with council members of Yankeetown and explained IWI's intent to develop the six parcels of land that IWI had purchased.  In October 2005, local elections were held and Joanne Johannesson was elected mayor.  On May 2, 2006, IWI submitted six applications for flood and zoning compliance review.  On May 31, 2006, a letter was sent to the city council from Stanley E. Moore acknowledging acceptance and approval of IWI's zoning applications and identifying that IWI needed to submit an additional $6,120.  The letter also indicated that the town had 30 days to review IWI's detailed site plan.  Moore directed IWI to submit supplemental information and detailed site plans, which would then be submitted to the city on behalf of IWI.   In August, Moore sent a letter to Mayor Johannesson, reconfirming his approval of IWI's flood and zoning compliance applications.

Prior to final acceptance of the plan by the town council, Moore resigned. Additionally, by September 2006, all but three members of the town council had resigned.  Plaintiff claims that they resigned amid slanderous and defamatory allegations and accusations and threats of bodily harm and economic damage. As an example, Plaintiff alleges that one of the town councilwomen, Helen

Ciallella, "resigned amid members of SWAY's allegations of a conflict of interest, and threats of bodily harm" because Ciallella had executed a purchase and sale contract for the sale of her property to IWI.

Additionally, Yankeetown Mayor Joanne Johannesson was accused of secretly working with IWI and Forum in order to advance the IWI project. Yankeetown citizens submitted two petitions for the removal of Mayor Johannesson from office. However, at the Mayor's recall hearing, on June 28, 2006, a judge found that the mayor was not subject to a recall under state statutes and that the basis of the recall petitions were insufficient and unfounded. Notwithstanding the judge's decision, on September 19, 2006, Mayor Johannesson resigned in a letter to then-Governor Bush stating that

> there are some who may have engaged in illegal and immoral actions to obstruct these property owners (IWI). These actions include the theft of development submittals and public documents and the manipulation of Town codes and procedures to halt the administrative process.

Plaintiff claims that those actions stated in the letter were undertaken as part of the stated purpose of Defendant, through his involvement with SWAY. Eventually, the town attorney sent a letter to Governor Bush requesting assistance in the governance and operation of the town. In response, Governor Bush appointed an emergency financial board to administer the financial business of Yankeetown.

On September 29, 2006, members of SWAY filed a Notice of Appeal against Moore's approval of the flood and zoning applications. In November 2006,

after no final decision had been made by the town council on the zoning applications, IWI filed a Writ of Mandamus for a new zoning official to be appointed. During the period of time between Moore's approval of the zoning applications and the appointment of the new zoning official, four council members who had expressed support for the project resigned. The new council members who were elected and eventually halted the development project were all members of SWAY. The new council members appointed Rebecca Jetton as its part-time zoning official. Jetton then issued a rejection of the development plan that had previously been approved by Stanley Moore.

Subsequently, on September 28, 2007, the Plaintiff brought this action for tortuous interference with an advantageous business or contractual relationship and conspiracy to tortiously interfere. Defendant Young has filed this motion to dismiss the amended complaint for 1) lack of subject matter jurisdiction due to lack of ripeness; 2) impermissible forum shopping; 3) violating Defendant's constitutional right to free speech; and 4) Plaintiff's failure to state a legally cognizable cause of action for tortious interference or conspiracy.

## II. DISCUSSION

**A.     Legal Standard for a Motion to Dismiss**

1. <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may constitute a facial attack based on the complaint or it may be a factual attack that

challenges the existence of subject-matter jurisdiction irrespective of the pleadings. Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997). When there is a factual attack the court may consider matters outside of the pleadings, such as testimony and affidavits.[1] Id. at 1261; see also Land v. Dollar, 330 U.S 731, 735 n.4 (1947) ("But when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

When the attack on subject matter jurisdiction is intertwined with the merits of the case and implicates the existence of an element of the cause of action, the court should find that there is jurisdiction and "'deal with the objection as a direct attack on the merits of the Plaintiff's case.'" Garcia, 104 F.3d at 1261 (quoting Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981)). In such cases, the court evaluates the motion under Rule 12(b)(6) and Rule 56. Id. If the court considers matters outside the complaint and thus converts the motion to dismiss (under Rule 12(b)(6) into a motion for summary judgment (under Rule 56), the court must give the parties notice and allow them to submit evidence, unless the parties were aware of the court's intent to consider such matters and had already presented their arguments and evidence. Id. at 1266, n.11. In this case, because the attack

---

[1] Generally, when a court considers matters outside the pleadings when ruling on a Rule 12(b)(1) motion, this does not convert the motion into a motion for summary judgment. Stanley v. Cent. Intelligence Agency, 639 F.2d 1146, 1158 (5th Cir. 1981); see also Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 n.8 (11th Cir. 1993) ("The conversion feature of Rule 12(b) . . . is limited to motions to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6).").


on subject matter jurisdiction is intertwined with the merits and the Court declines to consider matters outside of the complaint, this matter will be evaluated under the standard for the 12(b)(6) motion.

2. Rule 12(b)(6) Motion to Dismiss

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff is required to include in the complaint only a short and plain statement of the claim that demonstrates that the plaintiff is entitled to relief. Fed. R. Civ. Pro. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citations omitted). On the other hand, as the Supreme Court has repeatedly stressed that "[s]pecific facts are not necessary; the statement need only give the Defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal quotations omitted).

Under a Rule 12(b)(6) analysis, all factual allegations in the complaint must be accepted as true. Id; see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (noting that the court should construe the pleadings broadly and view the allegations in the light that is most favorable to the plaintiff). Based on the standard for pleadings described in Bell Atlantic, to survive a 12(b)(6) motion to dismiss, the plaintiff's complaint must allege "enough facts to suggest, raise a reasonable expectation of, and render plausible" the existence of an element of the

claim.  Watts, 495 F.3d at 1295-96.

**B.     Subject-Matter Jurisdiction and Ripeness**

The doctrine of ripeness is based both on the limitations on the federal judicial power of Article III of the Constitution and on prudential concerns.  Nat'l Park Hospitality Assn' v. Dep't of Interior, 538 U.S. 803, 807-08 (2003); see also Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995).   Ripeness "present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute."  Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006).  The doctrine's purpose is to protect the courts from engaging in premature adjudication or becoming entangled in abstract disagreements between the parties.  Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).

Under the two prongs of the Abbott test, ripeness depends on whether the issues are fit for judicial review and on the hardship on the parties of withholding adjudication.  Id. at 148-49.  In particular, purely legal questions and questions that involve final agency action are fit for judicial review.  Id. at 149.  The determination of whether an issue is purely legal may depend on whether it would be clarified by further factual development.  Thomas v. Union Carbide Agric. Prods Co., 473 U.S. 568, 581 (1985); see also Beaulieu v. City of Alabaster, 454 F.3d 1219, 1227 (11th Cir. 2006); Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) (noting that the court must determine whether the issues are "sufficiently

defined and concrete").

The overwhelming majority of cases that raise the question of ripeness involve disputes that challenge, on constitutional grounds, the validity of a statute or the actions of a governmental body, local authority or agency.  See, e.g., Union Carbide, 473 U.S. at 580-81 (finding that a challenge to the constitutionality of an arbitration scheme imposed by a federal statute was ripe); Digital Props., 121 F.3d at 590 (finding that a First Amendment challenge to a town's zoning ordinance was not ripe in the absence of conclusive administrative action); Beaulieu, 454 F.3d at 1230 (finding that a First Amendment challenge to an ordinance restricting signs was ripe after the city issued a written notice of violation).

In the rare case where a common law action or an action for damages has been challenged for lack of ripeness, the courts have found that ripeness is linked to the Plaintiff's cause of action.  Thus, the Eleventh Circuit, after reviewing for ripeness four constitutional challenges to a zoning decision, concluded that the fifth claim, for tortious interference with an advantageous relationship, could proceed because the Plaintiffs had alleged the required elements of the claim and would prevail if they could prove them.  Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1542 (11th Cir. 1991).

Similarly, in the present case, the underlying ripeness analysis is related to the existence of an element of the Plaintiff's claim.  The Plaintiff has brought action against private individuals for tortious interference with an advantageous

relationship. In essence, the amended complaint alleges that this Defendant was aware of Plaintiff's relationship with IWI and that his behavior would result in halting the development of IWI's property and would therefore thwart the ongoing business relationship between IWI and Plaintiff, resulting in harm to the Plaintiff. Thus, there is no need for further factual development to resolve the jurisdictional issue and the claim is fit for judicial review.

The second prong of the ripeness inquiry under Abbott, the hardship to the Plaintiff due to withholding adjudication, also supports the finding that this claim is ripe for adjudication. Therefore, there is no need to await further factual development as to the elements of Plaintiff's claim. Assuming, as we must for the purposes of a motion to dismiss, that the Plaintiff is able to prove those elements, withholding adjudication would undeniably constitute a hardship for the Plaintiff who would be deprived of the opportunity to resolve its complaint against Defendant. Thus, the claim is ripe for adjudication and consequently, Defendant's motions to dismiss for lack of subject matter jurisdiction will be denied.

### C. Tortious Interference with a Business Relationship

Under Florida law, a claim for tortious interference with a business relationship has four elements: "(1) the existence of a business relationship that affords the Plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the Plaintiff." Int'l

Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001).

"[A]ctual ill-will or fraud is not an essential element of the tort where the record shows purposeful interference with a prior contract right." McDonald v. McGowan, 402 So. 2d 1197, 1201 (Fla. Dist. Ct. App. 1981). "To do intentionally that which is calculated in the ordinary course of events to damage, and which in fact does damage, another person in his property or trade, is malicious in the law, and is actionable if done without just cause or excuse." Symon v. J. Rolfe Davis, Inc., 245 So. 2d 278, 280 (Fla. Dist. Ct. App. 1971). Direct evidence of intentional interference is not necessary; it may be proved by circumstantial evidence. Sutton v. Stewart, 358 So.2d 119, 121 (Fla. Dist. Ct. App. 1978).

Defendant argues that Plaintiff has failed to allege intentional interference with a contractual relationship. One of the cases that Defendant relies on is Ethyl Corp. v. Balter, in which the appellate court reversed a judgment for the plaintiff. 386 So. 2d 1220, 1221 (Fla. Dist. Ct. App. 1980). The court found that the plaintiff had failed to prove intentional interference, where the steps the defendant had taken to safeguard its investment only very indirectly led to the investor's withdrawal. Id. at 1223-24. In contrast, a claim could withstand a motion to dismiss when the plaintiff alleged that the defendant intentionally interfered with plaintiff business's relationship with an insurance company by performing unnecessary repairs and misclassifying hurricane damages. Bray & Gillespie

Mgmt. LLC v. Lexington Ins. Co. 527 F. Supp. 2d 1355, 1368 (M.D. Fla. 2007).

In the present case, looking at the allegations in the amended complaint in the light most favorable to Plaintiff, Plaintiff alleges that it had a contract with developer IWI to design and obtain permits for a development project, that Defendant knew about this business relationship, that Defendant intentionally and without justification interfered with that relationship by intimidating and threatening local officials who had authority to approve the development's zoning applications and publishing inaccurate information about Plaintiff's representative in an attempt to delay and halt Plaintiff's ability to continue its relationship with Forum. Contrary to Defendant's claims, regardless of the finality of the approval of the flood and zoning compliance certificate, there was still an ongoing business relationship between Plaintiff and IWI. Therefore, Plaintiff sufficiently alleges Defendant's direct interference with its business relationship with the developer to withstand a motion to dismiss.

Defendant also argues that Plaintiff cannot allege actual interference. Plaintiff alleges that it had a contract to design a development and obtain the necessary permits and that Defendant's behavior resulted in the halting of this ongoing business relationship through intimidation of local officials in positions to approve the development project. In addition, the amended complaint explicitly indicates that the contract with the developer included but was not limited to certain activities. Plaintiff's allegations are sufficient to plausibly suggest that Plaintiff had

a contractual or business relationship with the developer to provide a series of services related to the project and that Defendant interfered with that relationship. Additionally, because this Court finds that Plaintiff has properly demonstrated actual and intentional interference, Plaintiff's claim can indeed give rise to a claim for damages.  Lastly, because Plaintiff has properly demonstrated a legal basis for tortious interference with a business relationship, Plaintiff has also demonstrated a basis of relief for Count Two, civil conspiracy.

**C. False Light Invasion of Privacy**

Plaintiff's third claim against Defendant is for false light invasion of privacy. Since Defendant Peters' motion to dismiss and Plaintiff''s response have been filed, the Florida Supreme Court has held that they "decline to recognize false light as a viable cause of  action in this state." Jews for Jesus, Inc. v. Rapp, 2008 Fla. LEXIS 2010, 48-49 (Fla. Oct. 23, 2008).  See also Anderson v. Gannett Co., 2008 Fla. LEXIS 2009 (Fla. Oct. 23, 2008).  The Court reasoned that "the benefit of recognizing the tort, which only offers a distinct remedy in relatively few unique situations, is outweighed by the danger of unreasonably impeding constitutionally protected speech." Rapp, 944 So. 2d at 44.  Accordingly, because there is no cause of action for false light invasion of privacy, Count Three will be dismissed.

Accordingly, it is hereby ORDERED AND ADJUDGED that Defendant Michael Peters' motion to dismiss Counts One and Two (doc. 130) is hereby **denied**.  Defendant Michael Peters' motion to dismiss Count Three is hereby

**granted**.

DONE and ORDERED this twenty-sixth day of November, 2008.


_s/ Stephan P. Mickle_

Stephan P. Mickle
United States District Judge